IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WILLIAM C. FLAX, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No. 03-922-KAJ |
| | ) |
| STATE OF DELAWARE, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM ORDER**

**I.    Introduction**

Plaintiff William C. Flax ("Flax"), who proceeds *pro se*, filed this action alleging

employment discrimination pursuant to 42 U.S.C. §§ 1981a, 12203(a), 12112, 2000e-5;

29 U.S.C. §§ 158, 791; and, 15 U.S.C. §§ 1673-1677.  (D.I. 73.)  More particularly, Flax

alleges race discrimination and violations of the Americans with Disabilities Act ("ADA").

Discovery issues have plagued this case from its inception.  This Order is an effort to

resolve the continuing discovery issues.  Going forward, no further discovery shall take

place.

**II.    Allegations of Complaint**

The complaint as amended alleges that Flax was employed by the State of

Delaware ("the State") as a Master Family Service Specialist (social worker).  (D.I. 2,

73.)  He was involved in a work related auto accident in February 2001 and was off

work for over a year.  (D.I. 2.)  In March 2002 Flax was released to return to work with

restrictions, and he alleges the State refused to allow him to return to his former

position with reasonable accommodations as ordered by his physician.  (*Id.*)  Flax

alleges he was removed from the State's payroll on May 31, 2002, because he had been off work for over one year.  (*Id.*)

Flax then filed a claim to determine his workers compensation benefits seeking to recover total disability benefits.  The Delaware Supreme Court affirmed the lower courts' decisions and held that the evidence did not support a conclusion that Flax was totally disabled during the claimed period.  *Flax v. Delaware*, No. 450,2003, 852 A.2d 908, 2004 WL 1535816 (Del. 2004).

 He applied for Social Security disability in June 2002, and the State allowed Flax to return to work on a special project for a two month period so that he could qualify for a state pension. (D.I. 2.)  Flax was awarded Social Security disability benefits in July 2002 and he retired from his state position in September 2002.  (*Id.*)

Flax alleges that he was discriminated against on the bases of race, age, and disability, when he was denied reinstatement to his former position.  (*Id.*)  He also alleges that a white employee received an accommodation when she became disabled, that he believes he was replaced with a younger social worker, and that he was discriminated against in retaliation for filing a union grievance over salary issues based upon discrimination.  (*Id.*)

Flax seeks injunctive relief, back pay, lost benefits and wages, compensatory and liquidated damages, benefits from workers' compensation, settlement and adjustment of any collateral claims of withholdings made upon his salary while he was off work, and front pay in lieu of forced disability retirement.  (D.I. 73.)

2

### III.    Procedural and Factual Background

Flax filed his original complaint on October 1, 2003. (D.I. 2.) He was granted

leave to proceed *in forma pauperis* and service was effected upon the State. (D.I. 4-6.)

On August 30, 2004, a scheduling order was entered setting a discovery cutoff date of

August 1, 2005. (D.I. 21.) Also, a trial management order was entered. (D.I. 22.) Flax

and the State filed their initial disclosures and a few days later Flax served a subpoena

upon the Division of Family Services' ("DFS") personnel manager and he also filed a

request for admissions. (D.I. 24, 25, 27, 28.) One week later, on September 17, 2004,

Flax filed a motion for the court to approve or consider his request for inspection of his

former employer's premises. (D.I. 28.) The State opposed the motion, arguing that

Flax was merely unhappy with the State's response to his subpoena, which the State

construed as a request for production of documents. (D.I. 29.) The State opposed any

order to allow Flax to personally enter the offices of DFS to gather documents.

Next, Flax served subpoenas for records upon the executive director of the

AFSCME[1] Council 81, upon the insurance coverage office for the State, and upon the

Pennsylvania Manufacturer Association Insurance Company ("PMA"). (D.I. 31, 32, 33.)

On October 15, 2004, the State responded to Flax's first request for production

of documents and request for admissions (D.I. 34, 35.) Documents provided included

an affirmative action/managing diversity plan July 2002 - June 2003; June 2, 2004 Flax

letter; June 5, 2002 Susan McNamara memorandum; master family services specialist

job description; June 3, 2002 AFSCME grievance form; Delaware Department of Labor

---

[1]The complete name of the union is the American Federation of State, County and Municipal
Employees. http://www.afscme.org

3

referee's decision mailed July 26, 2002; January 22, 2003 Bill Southam letter;

September 30, 2002 application for pension; 2001, 2002, 2003 earnings for Flax; 2001

leave balance; June 29, 2004 decision by the Supreme Court for the State of Delaware

in *Flax v. Delaware*, No. 450, 2003; July 10, 2003 EEOC dismissal and notice of rights;

response to Flax's charge of discrimination; October 18, 2002 State of Delaware

Industrial Accident Board decision; Flax's personnel records; Flax's charge of

discrimination, Charge No. 170A300336; decision of the Superior Court of Delaware,

*Flax v. Delaware*, No. C.A. 02A-11-002-FSG;  2001 salary schedule for Flax;

October 12, 2000 Jesse Langston memorandum; and wage attachment and

garnishment records.

  Flax filed a memorandum dated October 22, 2004, memorializing his

conversation with the State's counsel regarding discovery concerns and indicating that

he was in need of an "Employees Handbook, and a State of Delaware Human

Resources Procedural Manual." (D.I. 36.)  Flax then filed a motion to extend the time to

supplement his pleadings, explaining that he intended to assert new claims and a new

legal theory based upon the same core of facts. (D.I. 37.)  The State objected to this

motion, arguing that Flax had issued multiple discovery requests, including four

requests for production of documents and a request for admissions. (D.I. 38.)  The

State indicated that the discovery was provided to Flax, along with a copy of his entire

personnel file. (*Id.*)  Flax replied arguing that he believed there was new evidence

regarding the State's interpretation of its "affirmative action, employment, and protected

class guidelines that may have mislead the EEOC." (D.I. 38, 39, 41.)  Flax requested

that he have access to and inspect his original personnel file under controlled

supervision. (D.I. 39.) He also indicated that the following evidence would support his claim: nonconfidential statistics, a routinely developed seniority list, list of office of child services personnel and vacancies, routine calculations of personnel assigned, transferred, and promoted within the division. (*Id.*) The State responded, and again objected to an amendment, noting that it had produced Flax's personnel file. (D.I. 44.) Flax filed an "answer" to the State's opposition. (D.I. 51.)

On December 8, 2004, Flax filed two motions to compel the production of documents: one directed to the Delaware Insurance Coverage Office ("DICO") and the other directed to PMA. (D.I. 45, 46.) Flax argued that DICO did not object or produce the records requested in his October 5, 2004 subpoena. (D.I. 45.) Flax subsequently withdrew the motion to compel, noting that he had received responses from DICO on December 11, 2004. (D.I. 57.)

With regard to PMA, Flax argued that it provided an incomplete production of documents and he disagreed with PMA's statement that it had "no further obligation to [his] request." (D.I. 46.) Flax further argued that PMA was "attempting to conceal significant portions of [his] coverage." (*Id.*) Flax had sent a follow-up letter to PMA dated March 5, 2003, but filed December 17, 2004, wherein he advised counsel for PMA that he believed there was more discovery at PMA essential for the development of his case. (D.I. 56.) PMA opposed the motion to compel, arguing that it had fully responded to Flax's subpoena duces tecum, and it sought a protective order. (D.I. 59.)

Additional information and documents were produced to Flax by the State on December 9, 2004, including Flax's DICO claim file, and a witness name at DICO. (D.I. 48.) The next day, Flax filed a memorandum to counsel for the State, again regarding

discovery concerns. (D.I. 52.) Flax made the following complaints: the latest response from the State did not correspond with the categories of documents he had demanded, the State did not label any of the pages or documents submitted to him, the State ignored his set of definitions and his interpretation of instructions, there were missing and undated pages, there were untitled pages without adequate headings, he received documents "that were not correlated [as requested]," and he received an incomplete medical authorization for injured employees. (*Id.*) Flax requested a copy of a State human resources ("HR") procedural manual, indicating that it would affirm or refute his charges against DFS; he also sought an employee handbook and permission to have personal access to his original personnel records, as he believed was provided for in the union's labor-management agreement. (*Id.*) Almost immediately thereafter, Flax filed another memo to counsel for the State, dated December 14, 2004, reiterating certain aspects of his previous memorandum. (D.I. 55.)

I scheduled a teleconference for January 5, 2005, to discuss the disputed discovery issues. (D.I. 58.) In the meantime, Flax continued to correspond with counsel for the State and he advised the State of the persons he wished to depose. (D.I. 62, 63.) Flax also filed an "outline of issues" to discuss during the January 5th conference relative to his discovery dispute with PMA. (D.I. 64.)

The discovery telephone conference was held as scheduled.[2] I was advised that Flax no longer had any discovery disputes with the State. (1/5/05 teleconference transcript at 7-8.)

_____

[2]During the teleconference, Flax was also given two weeks to file an amended complaint. (D.I. 65.) He did so on January 18, 2005. (D.I. 73.)

I then heard about discovery from PMA.  PMA advised that it had provided to Flax all discovery other than that considered privileged.  (*Id.* at 13.)  PMA stated that it would search for additional documents that Flax requested and, so long as the documents were not privileged, would produced them.  (*Id.* at 20-21.)  I advised Flax that, in discovery disputes, he must demonstrate how a requested document is relevant to his claim of discrimination.  (*Id.* at 21-22.)  I also suggested to Flax that he speak to counsel for PMA regarding taking the depositions of PMA employees.  (*Id.* at 23.)  Flax proceeded to subpoena for deposition two PMA employees and continued to schedule depositions for PMA employees as well as for State employees.  (D.I. 67, 68, 69, 70, 74, 75, 76.)  He also requested that the State employees bring all relevant documents to their deposition and review applicable policies and procedures relating to each and every one of the acts alleged to be discriminatory.  (D.I. 70.)

On January 14, 2005, the State provided Flax documents from DICO in support of its policies and procedures.  (D.I. 72.)  On January 25, 2005, the State served its first set of interrogatories and first request for production of documents directed to Flax.  (D.I. 78, 79.)  Flax responded to the discovery requests on March 11, 2005.  (D.I. 85, 86.)  Counsel for the State wrote to Flax that his claims of privilege or confidentiality were not sufficiently identified, making it difficult to understand them or object to them.  (D.I. 87.)  Counsel for the State explained to Flax the procedure used when claiming a privilege.  (*Id.*)  Later that month, Flax supplemented his discovery responses.  (D.I. 98, 99, 101,102.)

On January 26, 2005, Flax filed a letter complaining that the tactics of counsel for the State had seriously and negatively affected his efforts during the taking of

7

depositions.  (D.I. 80.)  Flax specifically mentioned that the attorneys instructed the
"court recorder" not to go off record, and they instructed Flax not to interrupt their
witnesses.  (*Id.*)  Flax's deposition was taken on April 6, 2005.  (D.I. 105.)

On April 28, 2005, Flax served upon the State a second request for admissions.
(D.I. 104.)  The State filed its response on May 27, 2005 (D.I. 111, 114.)  The State
objected to certain requests for admission, and Flax requested a telephone hearing to
resolve the dispute.  (D.I. 119.)  Flax served upon the State a second request for
production of documents and the State responded to the request on June 8, 2005.  (D.I.
114, 116.)

On May 9, 2005, I learned of a yet another discovery dispute between the parties
because Flax sought to avoid paying for a copy of his deposition transcript.  (D.I. 107.)
Flax requested a hearing on the issue.  (D.I. 108.)  He also filed a copy of a local rule
he believed pertinent to the issue.  (D.I. 110.)  A hearing was held on May 26, 2005.
(D.I. 109, 112.)  At that time, I endeavored to explain to Flax several discovery rules
and their interplay with the court's local rules.  (D.I. 112.)  I advised Flax that, regardless
of his *pro se* status, he was not entitled to have the State pay for or make a copy of his
deposition and provide it to him.  I told him that he would have to pay the court reporter
if he wanted a copy of his deposition, or, since the deposition was filed, he could read
the transcript and make notes.

During the hearing Flax also requested that certain discovery communications
between him and the State be filed with the court.  I informed the parties that they were
expected to comply with the local rules regarding what should be filed.  I further

8

explained that not every communication was to be filed, but, in some instances, a communication might fit within the category set forth in Local Rule 5.4[3].

On June 6, 2006, Flax served a first set of interrogatories upon the State. (D.I. 113.) The State responded to the interrogatories on July 7, 2005. (D.I. 130.)

An interim case status report prepared by the State indicated that, as of June 8, 2005, Flax had conducted nine depositions, and the State had deposed Flax. (D.I. 115.) Also, the State indicated that it had produced in excess of two thousand pages of documents, and that Flax had responded to the State's discovery requests. The State indicated there was a recurring issue involving the "proper scope of discovery," particularly regarding Flax's earlier workers' compensation case. On June 13, Flax also submitted an interim status report and stated that he continued to seek from the State an "employee's manual", and that he had not received basic answers from top administrators with the State. (D.I. 118.) Flax stated that his latest request for admissions and production of the employee handbook and supervisor's HR manuals

_____

[3]Local Rule 5.4 states in pertinent part:

(a) *Service Without Filing.* Except in cases involving pro se parties, all requests for discovery under Fed. R. Civ. P. 31, 33 through 36, and 45, and answers and responses thereto, and all required disclosures under Fed. R. Civ. P. 26(a), shall be served upon other counsel or parties but shall not be filed with the Court. ...

(c) *Filing Where Necessary.* If depositions, interrogatories, requests for documents, requests for admissions, answers or responses are to be used at trial or are necessary to a pretrial or post trial motion, the verbatim portions thereof considered pertinent by the parties shall be filed with the Court when relied upon. ...

(f) *Notice of Filing.* When discovery materials are to be filed with the Court other than during trial, the filing party shall file the material together with a notice (1) stating, in no more than one page, the reason for the fling and (2) setting forth an itemized list of the material.

D. Del. LR 5.4.

were delayed by "efforts, conclusion, and are central and significant to the case." (D.I. 118.) Flax later submitted another interim status report on July 13, 2005 in outline form. (D.I. 121.)

On June 15, 2005, I held a status conference with the parties to discuss the State's June 8th report and Flax's June 13th report. (D.I. 123.) At the outset, we discussed discovery issues. (6/15/05 teleconference transcript at 3.) The first issue addressed was Flax's requests for discovery relative to his workers' compensation case, a case that was, as earlier noted, resolved by the Delaware Supreme Court. (*Id.* at 3-8.) The State argued that the case before me is an employment discrimination matter, not a workers' compensation matter, and that Flax was wrongly raising disputes over workers' compensation, wages and withholdings from his salary. (*Id.* at 3-4.) Flax responded that he sought certain documentation because it affected his leave and qualifications for a pension. (*Id.* at 6-7.) He further indicated that, relative to his ADA claim, documentation from the State reflected an inconsistency in the State's treatment of employees, since he was denied an accommodation while an accommodation was made for a person who was not in a protected class. (*Id.* at 7-8.) I directed the parties to resolve their discovery disputes as outlined in the scheduling order of August 30, 2004. (*Id.* at 8-9.) I encouraged Flax to remain focused on his discrimination claim and not let his concern about the earlier workers' compensation proceeding disrupt his effort to develop his case. (*Id.* at 9-10.) I advised Flax that he could not use the discrimination case as a vehicle to relitigate his workers' compensation claim. (*Id.*)

On June 16, 2005, Flax provided the State with additional documents to assist it in responding to Flax's request for production of documents. (D.I. 124.) Also in June,

10

the State served upon Flax a first request for admission, and Flax responded to the request. (D.I. 125, 152.) Later in the month, Flax served upon the State a third request for admissions and a second set of interrogatories. (D.I. 126, 127, 141.) The State objected to the second set of interrogatories on the basis that it had already responded to at least 51 subparts of interrogatories in Flax's first set of interrogatories, but the State did respond to the third request for admissions. (D.I. 131, 149.)

On July 8, 2005, Flax advised counsel for the State that he wanted to depose three witnesses employed by the State. (D.I. 137, 140, 143.) On the same day, Flax propounded his third set of interrogatories directed to the State. (D.I. 138.) Again, the State objected to the interrogatories on the basis that Flax had exceeded the limitation on interrogatories provided in the Local Rules. (D.I. 139.)

Flax then filed a motion for discovery sanctions on the basis that the State was engaged in discovery abuse and was impeding the discovery process. (D.I. 144.) I set a hearing on the motion. In the meantime, the State asked that the motion be stricken, arguing that it violated the scheduling order in the case and the Local Rules. (D.I. 147.) The State advised that a meeting had been held with Flax wherein Flax provided examples of documents and clarified the discovery he sought. Counsel for the State provided the clarified information to his client. The State also indicated that it had timely responded to all of Flax's discovery requests, permitted Flax to exceed the limitation on the number of depositions, and met with Flax to discuss and explain objections to discovery made by the State. (*Id.*)

A teleconference on Flax's sanctions motion was held on July 26, 2005. (D.I. 151.) Counsel for the State said that he had responded to all of Flax's discovery in

11

good faith, that he was willing to meet with Flax to discuss any discovery dispute, and if there was a basis for providing certain discovery and if it existed, the requested information would be turned over. (7/26/05 teleconference transcript at 3.) Flax stated that he believed the documents he requested existed and that counsel for the State was not being responsive to his requests. (*Id*. at 4-5.) Flax appeared to agree that he had difficulty focusing on his claim and not seeking discovery extraneous to his claim. (*Id*. at 6.) I advised Flax that he had not followed the appropriate process to file a motion for discovery sanctions, and the motion to strike was granted. (*Id*.) I instructed the parties to discuss the discovery issues, and then follow-up with a letter to the court, if there was no resolution. (*Id*. at 7.) Flax also raised the issue of more time to depose witnesses. (*Id*. at 8.) I told Flax to let me know if he believed there was a reason he was entitled to more time than the rules provided and to discuss the issue with counsel for the State. (*Id.* at 9-11.)

Despite my admonition to resolve discovery disputes, issues again arose between the parties. On August 1, 2005, Flax complained that the State cut short his deposition session of the regional administrator for DFS. (D.I. 154.) Flax also complained that he had yet to receive the employee handbook and other materials previously requested. The State agreed to provide Flax with an additional hour for the deposition and allowed Flax to tape record the deposition for his own use. (D.I. 155.)

Next, on August 31, 2005, Flax wrote to the court and complained that there were "differences with the Defendant regarding request for production." (D.I. 158.) Flax said that he learned the State was contractually obligated to comply with a labor and management agreement to provide annual documentation and that he had a dispute

12

with defense counsel's placement of "'remarks, objections, and contact'" with witnesses before and during deposition testimony. (*Id.*) Flax requested a discovery conference and also made reference to an extension of the dispositive motion deadline. On the same day Flax filed a copy of a letter to defense counsel regarding the most recent discovery disputes. (D.I. 159.) The State objected to an extension of the dispositve motion deadline. (D.I. 163.) I set a discovery hearing to resolve the conflict. (D.I. 162.) In preparation for the telephone conference, Flax filed an outline of the discovery disputes. (D.I. 164.)

The discovery teleconference, again initiated at Flax's request, was held on September 9, 2005. (D.I. 165.) Flax complained that he had not received documents essential to his case, as set forth in his outline. (9/9/05 teleconference transcript at 3.) Specific documents included a seniority list, labor management agreement, and list print out of hired and terminated employees. (*Id.* at 4.) The State indicated that a seniority list did not exist, although such a list had been required under the prior labor management agreement. (*Id.* at 5.) Flax argued that, even if the document did not exist, the "State of Delaware must print it up." (*Id.* at 6.) Flax also stated that he wanted the document produced even if the State did not think it relevant. (*Id.*)

I asked Flax to explain why the seniority list was relevant and helpful to his case. (*Id.* at 9.) Flax replied that, based upon his seniority and qualifications, he could make a case that his employer denied him the opportunity to return to work and to continue his career with the State, because the list would show that there were persons junior to him in jobs that he could have held. (*Id.* at 9-10.) The State argued that the requested seniority listing was irrelevant because it involved union negotiations or enforcement of

13

a labor agreement against a state in federal court and that none of Flax's claims involve a union or union activity. (*Id*. at 10-11.) Flax responded that with the list he could have a dialogue with management in terms of where he stood if there was a possibility of a lateral transfer. (*Id*. at 11-12.)

I explained to Flax that it appeared he was confusing his rights and privileges as a union member with the rights and remedies found under Title VII. (*Id*. at 15.) I asked counsel for the State to explore the situation to determine if such a document could be generated, and if it could, to do so, merely to simplify matters. (*Id*. at 16.) I advised Flax that if such a document could not be generated he would need to present a stronger argument on the issue of the how a seniority list would lead to evidence that Flax was discriminated against on the basis of his age or race. (*Id*. at 16-17.) Counsel for the State then suggested that the parties presume, for the purposes of any pending motions, that Flax had seniority over everyone, and Flax agreed to this proposal. (*Id*. at 17.) I then held that, because it was agreed that Flax was senior to everyone, there was no need to produce the seniority list, if such a list existed. (*Id*.)

I next addressed the issue of whether Flax was required to pay for a deposition transcript as an original or as a copy. I learned that Flax had a paid for an original transcript, had the transcript in his possession, but wanted the State to reimburse him because he did not believe he should have had to pay for an original. (*Id*. at 24-25.) I determined that there would be no cost adjustment. (*Id*. at 25.)

On November 3, 2005, the scheduling order was amended and the jury trial was reset for February 6, 2006. (D.I. 176.) All other deadlines remained in effect. On November 18, 2005, Flax requested a telephone conference to discuss meeting with

14

the State in preparation for the pretrial conference, the production of exhibits, and a possible delay in the case. (D.I. 177, 179, 180.) Hearing was held on December 1, 2005. I vacated the previously entered scheduling orders and set the matter for a status conference to be held on June 8, 2006. (D.I. 181.) The case was held in abeyance for six months. (D.I. 182.)

Prior to the June 8, 2006 status conference, Flax filed a letter on May 26, 2006, directed to the State, wherein he requested documents and documentation not received in response to earlier discovery requests. (D.I. 183, 184.) He specifically asked for all statements and relevant information from anyone connected to him during his employment at the State's Elwyn Office; an employee handbook and HR manual dating from October 22, 2004; references "about 'missing and undated, untitled pages, as well as, "footnoted: ...every employee are required to follow a procedure (Training Manual" ...'"; applicable copies of policies and procedures and supportive documentation referred to in EEOC request for information sheet; and, a copy of the grievance/complaint provided by the State's EEOC contact person. (D.I. 184.) The State responded by arguing that the discovery period ended on August 1, 2005. (D.I. 185.) It also referred to an agreement between the parties which had been conditioned upon the State providing Flax with an additional hour to depose a witness. Finally, the State indicated that the disputes raised by Flax had already been addressed and resolved.

The status conference was held on June 8, 2006. (D.I. 186.) Flax said that the State had not supplemented its discovery as agreed. (*Id*. at 4.) He referred to deposition testimony that he said indicated he had requested discovery from the

15

administrator[4], a supervisor's file, a grievance record for an audit regarding overpayment, payroll information for 2001, 2002, and 2003, and leave records. (*Id*. at 4-5.) Flax stated that his leave records were relevant because leave is an accommodation and that if the leave records show that leave was owed him then he should not have been removed from the payroll, and that the State violated his right to return to work through the use of his leave. (*Id*. at 6.) I then asked the parties to confer with the court's *pro se* law clerk, Ms. Nancy Rebeschini, and to advise her of their respective discovery positions. (*Id*. at 7-8.)

After meeting with Ms. Rebeschini, the parties met with me in open court and advised me of the discovery Flax continued to request. The State agreed that it would review the discovery Flax requested, if Flax would identify with specificity what he wanted, how he had previously asked for it (i.e., whether by interrogatory or document request), whether the request was made prior to the time discovery closed, and why the State's response was inadequate. (*Id*. at 10-11.) I gave Flax one week to prepare such a response. (*Id*. at 11-12.) I advised the State that, if the item was something reasonably requested and somehow was not provided to Flax, then the State was to give a point-by-point response regarding what was said or given to Flax. (*Id*. at 12.) I reminded Flax that the amended complaint was the relevant document as to the issues in the case. (*Id*. at 13-14.) I emphasized that the discovery process had to end at some point. (*Id*. at 15.) At the close of the hearing, Flax stated that he believed during depositions counsel for the State went beyond making proper objections. (*Id*.) I noted

---

[4]It is unclear what discovery Flax seeks, or whom the referenced administrator is.

16

that, if there was a discovery problem relative to an objection, it should be specifically identified.  (*Id.* at 15-16.)

One week later Flax filed a discovery request outline.  (D.I. 187, 188, 190.)  The outline contains twenty-two distinct discovery requests, as follows:  personnel records, individual employee history cards, job announcements, eligibility lists and tests, interviewing records, personnel policies, personnel requisitions, application and selection files, personnel inventories, collective bargaining files, grievances, performance appraisals, position cuts files, disciplinary files, employee service recognitions, salary schedules, leave records, time change requests, time and attendance reports, employee pension and retirement records, personnel studies and surveys, training records, affirmative action plans, affirmative action/ADA case files, accident and safety studies and reports, unemployment compensation claims, worker's compensation claims, accident reports, insurance claims, employee medical records, and COBRA and life insurance under "waiver of premium".  The filing also included a draft "agreement to protection of confidential materials," as well as a flow chart with the chronology of discovery in this case.  Finally, Flax included a "statement of difficulty," making an issue of the conduct of counsel for the State during the taking of depositions, complaining of objections made, exhibits used or added, and the failure to remove certain documents.

The State responded to the filing by arguing that Flax did not follow the court's directive, that he made new discovery requests even though the time for discovery was long past, that he raised new issues with regard to the taking of depositions, that his filing was late, and that he did not attempt to resolve any discovery issues.  (D.I. 189.)

The State also provided a listing of all documents provided to Flax.  In response to the State's objections, Flax filed a more succinct list of the information he continues to seek, the request number, date, and response or objection by the State.  (D.I. 191.) Flax's last filing requests default judgment against the State on the basis of discovery abuse and for impeding the discovery process.  (D.I. 193.)  Of course, the State opposes the motion.  (D.I. 194.)

## IV.    Discovery at Issue

This Order is intended to resolve all discovery issues in the case.  I will address the concerns raised by Flax in his June 30, 2006 letter (D.I. 191), since that document provides Flax's most specific requests and responses and most easily identifies the discovery at issue.

Pursuant to Fed.R.Civ.P. 26(b)(1) "parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim ... of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter ....  Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  Initially, I note that Flax continues to seek discovery that the State does not have, cannot find, is privileged, or has been produced.  The State cannot produce that which does not exist or which it does not have.  Nor is it required to produce documents not in its possession or under its control, nor those documents covered by privilege.  Finally, the State is not required to reproduce documents

18

previously produced.  After reviewing the requests and responses as set forth in the June 30, 2006 letter, I find as follows:

### A.    Plaintiff's First Request for Documents

The State's objection to Number 15 of Plaintiff's First Request for Production of Documents is well-taken.  (D.I. 34.)  Flax asked the State to "produce all documents that show the work histories at DFS of other employees who are qualified individuals with disabilities, as defined by the ADA."  The request is overly broad, calls for a legal conclusion, and asks for private information of State employees.  No adequate showing of relevance has been made to justify this sweeping and intrusive demand.

### B.    Plaintiff's Second Request for Admissions

Flax's Second Request for Admission seeks admissions or denials to statements relating to Flax's long-since resolved workers' compensation case.  In the case currently pending before this court, Flax alleges that he was discriminated against on the basis of his race, and that the State failed to make a reasonable accommodation for him and retaliated against him in violation of the ADA.  (D.I. 73.)

The State's objections to Second Request for Admission Numbers 1, 3, 4, 5, 7, 8, 9, and 11 are well-taken.  (D.I. 111.)  The current case does not rise or fall upon Flax's workers' compensation case, the calculation of benefits, deductions from his salary, the use of sick and vacation time, and the like.  The current case is brought as an employment discrimination case pursuant to Title VII and the ADA.  Again, no adequate showing of relevance has been made.

19

## C.   Plaintiff's Third Request for Documents

The State has adequately responded to Request Numbers 2, 10, 13, 14, 16, 17, 20, and 21 of Plaintiff's Third Request for Production of Documents. (D.I. 114.)  The court makes specific findings as to the other requests at issue.

Request Number 8 asks for copies of all formal and informal contact lists and duty rosters for personnel in DFS/OCS [to include Seniority list], detailing a.) assignments, b.) promotions, c.) transfers and vacancies, as well as length of time [per position, promotion, transfer, etc.] for all Supervisory, Management, and Bargaining Union Employee Personnel positions during 1999, 2000, 2001, 2002, and 2003.  The discoverability of this set of information was thoroughly addressed during the discovery dispute telephone conference held on September 9, 2005.  (D.I. 165.)  At the end of that conference call, the parties agreed that Flax would be deemed senior to all other personnel and that there was no need for the requested list.  Because no basis other than that already addressed during the conference call has been advanced to show the relevance of this information, Request Number 8 is moot.

Request Number 12 asks for a copy of all documentation in the State's possession in response to the Plaintiff's December 28, 2002, letter to the State's Treasurer.  The State responded that the information was being sought and that it would respond as appropriate upon receipt and review.  Flax indicated that he is still waiting for the "audit report".  The State responded in its most recent filing that it provided Flax with almost every document requested, if it was available and not privileged.  So there is no confusion, the State shall forthwith provide its response to

20

Request Number 12, be it that an objection was lodged, that the documents do not exist, or that the documents have been produced.

Request Number 22 asks the State to produce a list of all documents being withheld from production by virtue or any privilege of non-production or for any other reason.  The request states that the "list should identify each document by its name, date, author, and recipient, and specify the reason for withholding it from production." The State responded that it would "review the file for such documents and supplement this response."  The State did not object to Request 22, so any objection is waived.  So there is no confusion, the State shall forthwith provide the promised supplemental response to Request Number 22.

### D.    Plaintiff's First and Second Set of Interrogatories

I conclude that the State has adequately responded to the First Set of Interrogatories Numbers 1, 2, 3, 4, 6, 7, 8, and 9.  (D.I. 130, 131.)  The State's objections to Plaintiff's First Set of Interrogatories are well-taken and are sustained.

### E.    The State's July 19, 2005 letter and Flax's Response

There is no discovery dispute currently at issue.  These two letters (D.I. 147, 148) refer to Flax's motion for sanctions based upon discovery.  Hearing was held on the issue on July 26, 2005.  (D.I. 151.)  The parties presented their respective positions, and the motion was stricken.

### F.    Plaintiff's Third Request for Admissions

The State has adequately responded to Flax's Third Request for Admissions, Numbers 12, 15, and 17.  (D.I. 149.)

21

### G.    Depositions

The issue raised by Flax concerns the conduct of counsel for the State during the taking of depositions. Flax discusses what appears to be information he received during depositions of certain individuals. While not clear, it appears that Flax believes he is entitled to certain documents and discovery based upon the testimony and his exchanges with the deponents. These documents include: 1) the telephone list and roster of all DFS or Children Service Personnel, 2) forwarding information for former DFS employees Mr. Langson and Ms. Stokes, 3) promotion dates and a list of the personnel holding various jobs and seniority list, and 4) documentation from the EEOC contact person and the ADA administrator of Flax's visit and complaint of race discrimination at the time of his hire.

Flax indicates that he has been advised that forwarding information does not exist for a Mr. Langston and Ms. Stokes. Information cannot be produced if it does not exist. Therefore the request is denied. With regard to promotions and lists of personnel in their various jobs, as discussed above, the parties agreed during a telephone conference with the court on September 9, 2005, that for all purposes in this case Flax had seniority over other employees. Finally, Flax was hired by the State in 1997, and, as alleged in the complaint, the employment discrimination did not occur until May 2002. I am hard pressed to see the relevance of a race discrimination complaint made by Flax in 1997 prior to his employment with the State or to see what his contacts with the EEOC at that time have to do with his current complaints of employment discrimination. Accordingly, I conclude that Flax is not entitled to the information. Finally, if the State has not already done so, and if the documents exist,

22

the State shall provide to Flax the telephone list and roster of all DFS or Children

Service personnel for the relevant time period.

In prior telephone conferences Flax has raised the issue of conduct by counsel

during depositions and was advised by me to be specific when seeking relief in such a

dispute.  In his June 30, 2006 letter he references three events.  During the deposition

of C. Charkow, Flax asked the deponent for a list of supervisors and job titles.  (D.I. 191

at VI. 3.)  Whereupon counsel for the State stated, "I've taken your request, Mr. Flax,

and I've sent it on.  We didn't forget you."  Flax then refers to counsel's "comments

towards the end of page 39... ]."  In the same vein Flax refers to counsel for the State

when he deposed Mr. N. Coleman and requested EEOC documents.  He refers to

"[And, finally, Mr. Neidzielski's interjections from pages 10, 11, 12.]".  *Id.* at VI. 4.

The one specifically quoted comment Flax objects to is not objectionable.

Counsel for the State merely indicated that the discovery request was under

consideration.  The other two occurrences lack sufficient specificity, despite my

requests that Flax specifically identify discovery problems.  As a result, I am unable to

determine if there was improper conduct by counsel.  Flax merely refers to comments at

the end of a page and "interjections" on certain pages.  He does not indicate what was

objectionable about the comments or the interjections.  Nor were the referenced pages

attached to the June 30, 2006 letter.  Accordingly, Flax's objections to counsel's

conduct during depositions are overruled.  No discovery relief is afforded on this issue.

## V.    Motion for Default Judgment

Flax asks that I impose sanctions against the State in the form of a default

judgment, arguing that the State attempted to persuade me that he was noncompliant

with the court orders and arguing also that the State has ignored its duty to follow the requirements of Rule 26 of the Federal Rules of Civil Procedure. (D.I. 193.) The State responds that the request is improper under the court's previous scheduling order and is in violation of Local Rule 37.1.

The motion is frivolous and is summarily denied.

## VI.   CONCLUSION

Based upon the foregoing analysis, IT IS THEREFORE ORDERED that:

1.     The motion for default judgment (D.I. 193) is DENIED.

2.     The State shall provide the discovery as directed in the body of this order at Sections IV.C. and IV.G. no later than **August 31, 2006**. No extensions will be allowed and no further argument will be heard on any of the discovery discussed in this order.

3.     Discovery is complete and no further discovery shall take place. The parties are placed on notice that the court will summarily deny future discovery motions.

IT IS FURTHER ORDERED that:

1.     Case Dispositive Motions. All case dispositive motions, and opening brief, and affidavits, if any, in support of the motion shall be served and filed on or before **September 29, 2006**. Briefing will be presented pursuant to the court's Local Rules.

2.     Pretrial Order. The parties shall file with the court the joint proposed final pretrial order with the information required by the form of Final Pretrial Order previously provided to the parties on or before **January 29, 2007**.

3.     Pretrial Conference. On **February 27, 2007**, the court will hold a Final Pretrial Conference in Chambers with counsel beginning at 4:30 p.m. Unless otherwise

24

ordered by the court, the parties should assume that filing the pretrial order satisfies the

pretrial disclosure requirement of Federal Rule of Civil Procedure 26(a)(3).

    4.    <u>Trial</u>.  This matter is rescheduled for a three day jury trial beginning at

9:30 a.m. on **March 19, 2007**.  For the purposes of pretrial preparation, each side

should plan on being allocated a total of eight hours to present their case.

UNITED STATES DISTRICT JUDGE

August 18, 2006
Wilmington, Delaware

25